IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

IVY A.[1]
o/b/o of Z.H., a minor,

        Plaintiff,

v.

        Civil Action 1:23-cv-802
        Judge Jeffery P. Hopkins
        Magistrate Judge Elizabeth P. Deavers

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Ivy A. brings this action on behalf of Z.H., a minor, under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Z.H.'s application for Supplemental Security Income ("SSI"). This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 7), the Commissioner's response, (ECF No. 8), Plaintiff's reply (ECF No. 11), and the administrative record (ECF No. 6). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

I.      BACKGROUND

Ivy A. is the mother and guardian of Z.H., a minor, and she filed an application for SSI on Z.H.'s behalf on November 6, 2020, alleging that Z.H. was disabled beginning November 1, 2020, due to attention deficit hyperactivity disorder (ADHD) and an anxiety disorder. (R. at 159-65, 174). Z.H.'s application was denied initially in October 2021, and upon reconsideration in January

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

2022. (R. at 53-72, 79-87.) On April 23, 2023, Plaintiff, represented by a non-attorney representative, appeared and testified at a telephone hearing held by an administrative law judge ("ALJ"). (R. at 31-52.) On May 3, 2023, ALJ Cristen Meadows issued a decision finding that Z.H. was not disabled within the meaning of the Social Security Act. (R. at 14-30.) The Appeals Council denied Plaintiff's request for review on October 10, 2023, making the ALJ's decision the final decision of the Commissioner. (R. at 1-6.) Plaintiff timely filed an action in this Court. (ECF No. 1.)

## II. RELEVANT RECORD EVIDENCE

The Undersigned has thoroughly reviewed the transcript in this matter, including Plaintiff's medical records, relevant reports, and the testimony regarding her conditions and resulting limitations. Given the claimed errors raised by Plaintiff, rather than summarizing that information here, the Undersigned will refer and cite to it as necessary in the discussion of the parties' arguments below.

## III. ADMINISTRATIVE DECISION

On May 3, 2022, the ALJ issued her decision. (R. at 14-30.) The ALJ applied the sequential evaluation process under the child disability standards and made the following findings of fact and conclusions of law:

1. [Z.H.] was born …[in] 2010. Therefore, she was a school-age child on November 9, 2020, the date application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).

2. [Z.H.] has not engaged in substantial gainful activity since November 9, 2020, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).

3. [Z.H.] has the following severe impairments: attention deficit/hyperactivity disorder (ADHD), borderline intellectual functioning, and anxiety disorder (20 CFR 416.924(c)).

4. [Z.H.] does not have an impairment or combination of impairments that meets

2

     5.   [Z.H.] does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

     6.   The undersigned finds that [Z.H.] has not been disabled, as defined in the Social Security Act, since November 6, 2020, the date the application was filed (20 CFR 416.924(a)).

(R. at 18-25.) In determining that Z.H.'s impairments were not functionally equivalent to a listed impairment, the ALJ found:

- <u>a marked</u> limitation in acquiring and using information;
- <u>less than a marked</u> limitation in attending and completing tasks;
- <u>less than a marked</u> limitation in interacting and relating with others;
- <u>no</u> limitation in moving about and manipulating objects;
- <u>less than a marked</u> limitation in the ability to care for herself; and
- <u>no</u> limitation in health and physical well-being.

(R. at 20 (emphasis in original).) The ALJ discussed the functional domains in more detail and, because a finding of one "extreme" limitation or two "marked" limitations is needed in order to support an award of benefits, the ALJ denied Plaintiff's claim. (R. at 24-25.)

## IV. STANDARD OF REVIEW

### A. Child Disability Standards

To qualify for SSI as a child under the age of 18, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. *Id.* An individual under the age of 18 is considered disabled for purposes of SSI "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

3

The Social Security regulations set forth a three-step sequential analysis for determining whether a child is disabled for purposes of children's SSI benefits:

> 1. Is the child is engaged in any substantial gainful activity? If so, benefits are denied.
>
> 2. Does the child have a medically severe impairment or combination of impairments? If not, benefits are denied.
>
> 3. Does the child's impairment meet, medically equal, or functionally equal any in the Listing of Impairments, Appendix I of 20 C.F.R. pt. 404, subpt. P. 20 C.F.R. § 416.924(a)? If so, benefits are granted.

20 C.F.R. § 416.924(a)-(d).

The Sixth Circuit has summarized the regulations concerning a child's application for disability benefits as follows:

> The legal framework for a childhood disability claim is a three-step inquiry prescribed in 20 C.F.R. § 416.924. The questions are (1) is the claimant working, (2) does the claimant have a severe, medically determinable impairment, and (3) does the impairment meet or equal the listings? * * * An impairment can equal the listings medically or functionally * * *. The criteria for functional equivalence to a listing are set out in § 416.926a. That regulation divides function up into six "domains":
>
>> (1) Acquiring and using information;
>>
>> (2) Attending and completing tasks;
>>
>> (3) Interacting and relating with others;
>>
>> (4) Moving about and manipulating objects;
>>
>> (5) Caring for yourself; and
>>
>> (6) Health and physical well-being.
>
> § 416.926a(b)(1). To establish a functional impairment equal to the listings, the claimant has to show an extreme limitation in one domain or a marked impairment in more than one. § 416.926a(d). Lengthy definitions for marked and extreme are set out in § 416.926a(e). Each includes instructions on how to use test results:

4

> "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. § 416.926a (e)(2)(i).
>
> "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean. § 416. 926a (e)(3)(i).

*Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 832 (6th Cir. 2009).

### B.  Judicial Standard of Review

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally,

even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

V. ANALYSIS

Plaintiff raises three related statements of error, asserting overall that the ALJ erred in determining that Plaintiff's impairments did not equal a Listing, either medically or functionally. Specifically, Plaintiff argues that her impairments meet Listings 112.05 and 112.11 because the evidence demonstrates that she has a "marked" limitation in concentrating, persisting, or maintaining pace. Alternatively, Plaintiff contends that her impairments functionally equal the severity of a Listing because she has a "marked" limitation in the domain of attending and completing tasks. The Court will address these arguments, in turn, in the order presented by Plaintiff.

A. **Functional Domain of Attending and Completing Tasks**

As discussed, Plaintiff's argument that her impairments functionally equal the severity of a Listing focuses exclusively on the ALJ's findings regarding the domain of attending and completing tasks. Briefly, that domain considers how well a child is able to focus and maintain attention and how well he or she is able to begin, carry through, and finish activities, including the mental pace at which he or she performs activities and the ease of changing activities. (20 CFR § 416.926a(h); SSR 09-4p)). The domain also refers to a child's ability to avoid impulsive thinking and prioritize completing tasks and managing his or her time. (*Id.*).

Here, the ALJ discussed Plaintiff's limitations within the relevant domain as follows:

> In attending and completing tasks, I find less than marked limitations. Specifically, the record shows a history of treatment for ADHD, and school records indicates

> [Plaintiff] was very active in her seat during reading testing, she knelt on her chair, and she wandered around the room. On the other hand, recent examinations showed only a slight impairment in attention span, and while she was on medication, she was not participating in counseling. If her condition was markedly limited, I would expect more extensive treatment, including counseling, or at least a more restrictive learning environment. However, most of her instruction was performed in a regular classroom. Thus, consistent with the persuasive state agency assessment, I find no more than less than marked limitations in this domain.

(R. at 24.)

In claiming error, Plaintiff broadly cites teacher questionnaires, an evaluation team report ("ETR") from March 2022, treatment records from Nurse Stallworth at Children's Hospital, and a function report completed by her mother as the basis for her argument that she has marked limitations in the domain area of attending and completing tasks. (ECF No. 7 at 9). The ALJ, however, considered all this information, discussing it at some length elsewhere in her decision.

For example, with respect to the teacher questionnaires, the ALJ had this to say:

> In May 2022, Ms. Majestic, a 5th grade math and language arts teacher, found the claimant to have obvious to serious problems in acquiring and using information, noting that she struggled to read on her own (Exhibit 12E). And when she reads, she does so at such a slow and labored pace, the after even a short passage, she has troubles recalling what she read. Also, one on one conversations can be full of misunderstandings. As for attending and completing tasks, she noted issues ranging from no problem to very serious problems, including a very serious problem with focusing long enough to finish assigned activity or tasks. She also noted that the claimant was not very independent, and if she does not understand a task, she does not put forth effort. Furthermore, she requires repeated directions. As for interacting and relating, Ms. Majestic found no problem to obvious problems. Finally, the claimant noted no problems with self-care, moving and manipulating objects, or health and physical well-being.

> In April 2023, Ms. Lierman, an intervention specialist, generally reported slight to obvious problems in acquiring and using information, attending and completing tasks, interacting with others, and caring for self (Exhibit 15F). However, she did note a serious problem with organizing her own things or school materials and knowing when to ask for help. She explained that the claimant was behind her same-aged peers in organization, and she needed support and direction with using systems to help her stay organized. Also, while in 6th grade, she read at a 2nd grade level and requires extra help with math and language arts. And while she tends to shut down, not speak, and avoid eye contact, she is not a behavior problem. In

> addition, she cannot seem to ask for help or take it when offered, when she has already shut down.
>
> In April 2023, Ms. Link, a 6th grade science teacher, noted many serious problems in acquiring and using information and attending and completing tasks, stating that the claimant often needs additional instructions and help completing written assignments (Exhibit 16F). However, she only observed slight problems in interacting and relating with others, but when she was upset, she became withdrawn. Also, in caring for self, she noted a very serious problems with handling frustration appropriately, serious problems with appropriately asserting emotional needs, self-calming, or knowing when to ask for help. She explained that the claimant needed a calming place when upset or mad.
>
> These teacher assessments are only somewhat persuasive, as they are not fully supported by or consistent with underlying school records, the IEP, or the claimant's treatment history. While findings like reading at the 2nd grade level while in the 6th grade, are supported by objective testing, quantitating on a "no problem" to "very serious problem" scale is not definitive and does not comport to the restrictions as required under the functional listing analysis. However, I find that the opinions generally support a marked limit in acquiring and using information and less than marked or no limitations in the remaining domains.

(R. at 23-24.)

> Additionally, the ALJ discussed Plaintiff's ETRs in this way:
>
> The claimant started an individualized education program (IEP) in November 2020, and had been receiving special education services since April 2019 (Exhibit 2F/2-4). A June 2021 evaluation team report (ETR) noted attention deficits during reading and writing activities (Exhibit 4E/27). In addition, she bounced in her seat, knelt in her chair, wandered the room, and fell off her chair a few times. During an ADHD screening, she was rated to be within typical ranges of inattention and impulsivity when compared to her peers.
>
> A March 2022 ETR showed her to be well below grade level in the area of reading fluency but she was making great progress (Exhibit 10E; 12F/5). Extended time, having texts read aloud to her, small group testing and instructions, direct instruction, graphic organizers, modified spelling lists, and benefit rewards were recommended (Exhibit 10E/5; 13F/5). She was found to qualify for special education services under the category of specific learning disability (Exhibit 11E/4). The IEP was scheduled to run through March 2023 (Exhibit 11E/23; 12F/3).

(R. at 21.)

Further, the ALJ discussed Ms. Stallworth's treatment records and opinion as follows:

8

> As for the treatment record, in June 2021, Ms. Stallworth, a treating nurse, examined the claimant to follow-up on medication management for ADHD (Exhibit 3F/4-5). Based in part on the mothers' reports, she found the condition to be of moderate severity, but the claimant continued to be healthy with no medication side effects. Examination showed the claimant to be alert and fully oriented, normal psychomotor activities, normal speech, poor judgment and insight, appropriate mood and affect, average intelligence, intact memory, and appropriate language. She also found that the claimant's condition and symptoms were improving. Her mother also reported that the claimant earned A's after she returned to in-person classes. Metadate and Tenex were continued.
>
> …
>
> In March 2022, the claimant presented with complaints of getting in trouble at school (Exhibit 9F/3). She was experiencing moderate ADHD symptoms, and while mental status examination showed appropriate mood and affect and overall improving symptomatology, she also had poor insight and judgment. Her mother was open to adjusting medications to address increased aggressiveness. In November 2022, the claimant's mother reported that her daughter was doing well and the ADHD symptoms had been under control other than occasional forgetfulness (Exhibit 11F/3-5). In fact, while there was some aggressions, impulsiveness and peer interactions had improved. Ms. Stallworth's clinical findings showed her to be fully oriented with normal psychomotor activities, normal speech, poor judgment and insight, appropriate mood and affect, average intelligence, intact memory, and appropriate language. Medication was continued.

(R. at 21-22.)

> In December 2021, Ms. Stallworth, a treating nurse, opined that the claimant had marked limitations in all "B" criteria domains (Exhibit 7F). In support, she noted that the claimant was easily distracted and had difficulty staying on task; she was verbally confrontational with teachers, peers, and family due to impulsivity; she had difficulty remaining in her seat and with staying on task; and she will perform impulsive acts if not monitored closely. This assessment is not persuasive, as the entire reported basis for her findings are the mother's unsupported allegations. In addition, while I find marked restrictions are supported in acquiring and using information, based on the IQ scores and below grade reading levels, Ms. Stallworth's findings of extreme limitations in the other domains are not consistent with her own clinical findings. For example, in November 2022, she observed the claimant to be fully oriented with normal psychomotor activities, normal speech, poor judgment and insight, appropriate mood and affect, average intelligence, intact memory, and appropriate language (Exhibit 11F/3-5). These observations do not support marked restrictions in interacting and relating, attending and competing tasks, or caring for self. Overall, the opinion is not consistent with or supported by the evidence of record.

(R. at 23.)

Against this evidence, the ALJ reasonably considered other evidence in the record, including records from Dr. Paul Day and consultative psychologist Richard Sexton, Ph.D. (R. at 21.) The ALJ also discussed the opinions offered by Dr. Sexton and State agency psychologist Paul Tangeman, Ph.D. (R. at 22.) In doing so, the ALJ noted the following. In July 2021, Dr. Day reported that Plaintiff "was sleeping okay, she had an IEP, and she was reading at grade level as she entered the 5th grade." (R. at 21 citing R. at 468-470.) In September 2021, Dr. Sexton "observed good eye contact, no abnormal movement, [Plaintiff] worked effectively with the examiner, normal speech, well organized associations, normal mood, appropriate affect, alert, slight impairment in attention, and some difficulties with problem solving and judgment. (*Id*. citing R. at 451-459.) Testing "showed a full scale IQ of 69, suggesting that [Plaintiff] was functioning at the upper end of the mild range of intellectual disability." (*Id*.) Dr. Sexton "diagnosed unspecified ADHD and borderline intellectual functioning." (*Id*.)

With respect to Dr. Sexton's opinion regarding Plaintiff's mental impairments, the ALJ had this to say:

> … Dr. Sexton … opined that the [Plaintiff] demonstrated the capacity to understand oral instructions presented to her during the present evaluation; she demonstrated the capacity to learn new material and recall and apply previously learned material in novel problem-solving situations, although there was some variation in this regard; she had some difficulty maintaining attention when spoken to directly during the present evaluation; her mother reported that her daughter was able to sustain her attention during play situations and focus long enough to finish her activities, depending upon the nature of the task and her level of motivation to do so; the mother reported that the claimant was capable of playing cooperatively with age-peers, although she does not always choose to do so; she has had no problems making and keeping friends; and she was challenged at times managing her frustration in an appropriate fashion due to impatience (Exhibit 4F). These conclusions are only somewhat persuasive, as terms such as "some difficulty" and "some variation" are vague and do not fit within the marked or less than marked framework for functionally equaling a listing. In addition, many of the conclusions were simply a reiteration of the mother's reports. However, with regard to the

10

psychiatric domains, Dr. Sexton's findings are sufficient to support less than marked findings.

(R. at 22.)

Additionally, the ALJ discussed Dr. Tangeman's opinion as follows:

In October 2021, Dr. Tangeman … opined that the [Plaintiff] had less than marked limitations in acquiring and using information, attending and completing tasks, and caring for self (Exhibit 2A). In addition, he found no limitations in interacting and relating with others. Dr. Dietz, also a psychologist and state agency consultant, considered additional evidence and affirmed Dr. Tangeman's prior assessment (Exhibit 4A). These assessment[s] are somewhat persuasive, as the longitudinal treatment findings and academic record certainly supports "less than marked" restrictions in the psychiatric domains. However, based on the documented diminished reading level and the IQ scores, I further find that the claimant has marked restrictions in acquiring and using information.

(R. at 22.)

In asserting the ALJ's error, Plaintiff cites only portions of the record most favorable to her, disregarding the breadth of the evidence considered by the ALJ, and, in particular, the opinions of the psychological consultants. Construed fairly, Plaintiff's argument simply invites the Court to reevaluate the evidence. However, even if a preponderance of the evidence supports Plaintiff's position, the Court will not disturb the Commissioner's decision so long as substantial evidence also supports the conclusion the ALJ reached. *O'Brien v. Commissioner of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020). Under this standard, the Court cannot reweigh the evidence or substitute its judgment for that of the ALJ. *Joni W. v. Comm'r of Soc. Sec.*, No. 2:23-CV-2505, 2024 WL 488044, at *7 (S.D. Ohio Feb. 8, 2024). Here, the ALJ's findings are supported by substantial evidence within her "zone of choice." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). Accordingly, the ALJ did not err in concluding that Plaintiff had "less than marked" restrictions in the domain of attending and completing tasks.

11

**B. Listings 112.05B and 112.11**

Plaintiff's secondary argument is that she meets Listings 112.05B and 112.11. According to Plaintiff, it was error for the ALJ to conclude that she had only a "moderate" limitation in concentrating, persisting, or maintaining pace when the record supported a finding of a "marked" limitation.

To meet a listing, claimant's impairments must "satisf[y] all of the criteria of the listing." 20 C.F.R. § 416.925(d) (emphasis added). Where an ALJ does not discuss a listing, the Court "must determine whether the record evidence raises a substantial question as to [a claimant's] ability to satisfy each requirement of the listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 433 (6th Cir. 2014). To raise a substantial question, "[a] claimant must do more than point to evidence on which the ALJ could have based" her listing finding. *Id.* at 432 (quoting *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641-42 (6th Cir. 2013)). "Rather, the claimant must point to specific evidence that demonstrates [s]he reasonably could meet or equal every requirement of the listing." *Id.* (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)); *see also Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (finding harmless error when a claimant could not show that he could reasonably meet or equal a listing's criteria).

At the same time, the ALJ must provide a reasoned explanation regarding whether a claimant meets or equals the listings. *Sizemore v. Comm'r of Soc. Sec.*, No. 1:13-cv-521, 2014 WL 4549020, at *14-16 (S.D. Ohio Sept. 12, 2014) (discussing an ALJ's obligations in discussing listings in the case of a child applicant). In addition, the fact that an ALJ explicitly considered whether a child claimant functionally equaled a listing does not satisfy the obligation to separately analyze whether a child "meets or medically equals" a listing. *See Dodson v. Colvin*, No. 3:15-

cv-0497, 2016 WL 541471, at *15 (N.D. Ohio Feb. 11, 2016) (collecting cases); *M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846, 859 n.6 (E.D. Mich. 2012) (collecting cases).

As relevant here, both Listings cited by Plaintiff require a finding that she has an extreme limitation of one, or marked limitation of two, of the following four areas of mental functioning, referred to as the "B" critera: understand, remember, or apply information (*see* 112.00E1); interact with others (*see* 112.00E2); concentrate, persist, or maintain pace (*see* 112.00E3); or adapt or manage oneself (*see* 112.00E4). 20 C.F.R. Part 404, Subpart P, App. 1, § 112.05B; § 112.11. The focus of Plaintiff's claimed error is that she has a "marked" limitation in concentrating, persisting, or maintaining pace.

> The ALJ discussed the "B" criteria as follows.
>
> I have considered the Listing of Impairments but the medical evidence does not establish that the claimant's impairment(s), individually or in combination, meet or equal in severity the criteria of a listed impairment. In making this determination, I have considered the "B" criteria[.]
>
> I find that that in understanding, remembering, and applying information, the claimant has marked restriction for the reasons discussed in the "acquiring and using information" assessment discussed below, particularly her IQ score of 69 at the consultative examination and her need for an IEP at school. As for interacting with others and concentrating, persisting or maintaining pace, the claimant has moderate difficulties based on the same evidence that let to the less than marked determinations in "attending and completing tasks" and "interacting and relating with others" discussions below. Similarly, based on the evidence considered in the "ability to care for herself" assessment, I find that the claimant has moderate restrictions in her ability to adapt or self-manage.

(R. at 19.)

> To be clear, the area of mental functioning at issue here
>
> refers to the abilities to focus attention on activities and stay on task age-appropriately. Examples include: Initiating and performing an activity that you understand and know how to do; engaging in an activity at home or in school at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while engaged in an activity or task; changing activities

13

> without being disruptive; engaging in an activity or task close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at school; and engaging in activities at home, school, or in the community without needing an unusual amount of rest. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples. How you manifest this area of mental functioning and your limitations in using it depends, in part, on your age.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

As with her argument relating to functional equivalence, Plaintiff cites to record evidence supporting only her view. As discussed above, the ALJ supported her conclusion by reasonably relying on evidence in the record beyond this, including the psychological consultants' notes and opinions. Again, at best, Plaintiff's argument invites the Court to reevaluate the evidence. However, even if a preponderance of the evidence supports Plaintiff's position, the Court will not disturb the Commissioner's decision so long as substantial evidence also supports the conclusion the ALJ reached. *O'Brien*, 819 F. App'x 409, 416. Under this standard, the Court cannot reweigh the evidence or substitute its judgment for that of the ALJ. *Joni W.,* 2024 WL 488044, at *7. Here, the ALJ's findings are supported by substantial evidence within her "zone of choice." *Felisky*, 35 F.3d 1027, 1035. Accordingly, the ALJ did not err in concluding that Plaintiff had moderate restrictions in the mental functioning area of concentrating, persisting, or maintaining pace.

## VI. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore, **RECOMMENDED** that Plaintiff's Statement of Errors (ECF No. 7) be **OVERRULED,** and that the Commissioner's decision be **AFFIRMED.**

VII.  PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review by the District Judge and forfeiture of the right to appeal the judgment of the District Court.  Even when timely objections are filed, appellate review of issues not raised in those objections is forfeited.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


**DATED:**     **December 5, 2024**          /s/ *Elizabeth A. Preston Deavers*
                                             **ELIZABETH A. PRESTON DEAVERS**
                                             **UNITED STATES MAGISTRATE JUDGE**